UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Barry Arpin,<br><br>    Plaintiff,<br><br>v.<br><br>Semple *et al.*,<br><br>    Defendants. | Civil No. 3:24-cv-01033 (SRU)<br><br><br><br>July 22, 2024 |

**RULING AND ORDER ON**
**MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS***

  Ordinarily, a plaintiff who files a civil complaint must pay the filing and administrative fees totaling $405.  *See* 28 U.S.C. § 1914.  The plaintiff, Barry Arpin, has moved for leave to proceed *in forma pauperis* ("IFP").  In other words, he has asked the Court for permission to start a civil case without pre-paying the customary filing fee.  A federal law permits him to do so if, among other things, he submits an affidavit listing his assets and showing that he is unable to pay the fee.  *See* 28 U.S.C. § 1915(a)(1).  Under the 1996 Prison Litigation Reform Act, prisoners are only eligible for a payment plan the filing fee rather than a full waiver.  *See* 28 U.S.C. § 1915(b). The issue in this case is whether he is entitled to proceed IFP given the information he has provided the Court.  For the following reasons, his motion is **granted**.

  Courts often grant motions to proceed IFP where the plaintiff demonstrates that he cannot simultaneously afford to pay for his basic needs and the litigation fees.  The United States Supreme Court has held that "an affidavit is sufficient which states that one cannot because of his poverty

1

pay or give security for the costs and still be able to provide himself and dependents with the necessities of life." *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948) (quotation marks omitted).  The Second Circuit has upheld the principle that a plaintiff seeking IFP status need not prove he is destitute.  *Rosa v. Doe*, 86 F.4th 1001, 1005 (2d Cir. 2023); *Potnik v. E. State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983).

Courts have determined that a litigant can qualify for IFP status if he cannot afford both the filing fees and necessary expenses for himself or his family.  *See Rosa*, 86 F.4th at 1010.  In *Rosa*, the Second Circuit stated the importance of considering the additional expenses for the "necessities of life" that arise outside of what is provided to prisoners by the prison system.  *Id.* at 1009.  A court must take into account the "often complex, economic lives" of prisoners by assessing such things as their debts, medical expenses, support to family, as well as the cost of hygiene products and phone calls which are not provided to them.  *See id.*  In recognizing this, a court should carefully weigh the expenses a litigant may have when determining whether to grant IFP status.

However, courts have routinely rejected a litigant's application for IFP status if he has disabled himself through his own discretionary spending.  *See, e.g., Clark v. Pappoosha*, No. 3:21-cv-1690 (CSH), 2022 WL 960296, at *2 (D. Conn. Mar. 30, 2022); *Breton v. Martin*, No. 3:22-cv-00510 (SVN), 2022 WL 1541417, at *2 (D. Conn. Apr. 21, 2022).  "All litigants must make decisions about how to spend their money when they are contemplating litigation." *Brown v. Ruiz*, 2020 WL 6395480, at *1 (D. Conn. Nov. 2, 2020).  Courts have denied requests for IFP status where a plaintiff had money at the time they were contemplating litigation and spent that money at the commissary.  *Hinton v. Pearson*, 2021 WL 3036921, at *2, (D. Conn. Jul. 19, 2021).

Accordingly, a plaintiff spending down his account after he has filed does not entitle him to IFP status. *Hill v. Cook*, 2021 WL 1178209, at *2 (D. Conn. Mar. 29, 2021); *see also Crispin v. Brady*, 2021 WL 1910893, at *2 (D. Conn. Mar. 16, 2021). The Court may therefore consider whether a plaintiff had the necessary funds to pay for litigation at the time of filing but has since spent that money elsewhere.

Additionally, in determining whether a plaintiff's financial circumstances meet these standards, courts consider not only his or her personal resources, but also the resources of persons who support him. *See, e.g., Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 537 (S.D.N.Y. 2002) ("In assessing an application to proceed in forma pauperis, a court may consider the resources that the applicant has or can get from those who ordinarily provide the applicant with the necessities of life, such as from a spouse, parent, adult sibling or other next friend.") (internal quotation marks and citations omitted); *Monti v. McKeon*, 600 F. Supp. 112, 114 (D. Conn. 1984), aff'd, 788 F.2d 1 (2d Cir. 1985) (table decision). In other words, "[w]here a litigant is supported or assisted by another person, the Court may consider that person's ability to pay the filing fee." *Pierre v. City of Rochester*, No. 16-CV-6428 CJS, 2018 U.S. Dist. LEXIS 231117, 2018 WL 10072449, at *1 (W.D.N.Y. Dec. 13, 2018).

Mr. Arpin originally filed a motion to proceed IFP in which he stated that he received $1,400 in the past six months from his wife. (ECF no. 9 at 2.) He also stated that he received $24 a month working as a mentor in the department of corrections. (*Id.*) Ordinarily, this level of income would be considered too high to support IFP status. *See Sanders v. Martin*, No. 3:24-cv-01005 (SRU), 2024 WL 3105670, at *2 (D. Conn. Jun. 24, 2024). Moreover, his trust account

3

statement further showed he had spent $1,243.56 on the commissary in the past six months. (*Id.*) Thus, the question presented by his motion is whether his spending is necessary or discretionary.

Given the substantial support that Mr. Arpin admitted he was receiving from his wife, the Court issued a notice of insufficiency which instructed him to provide information about his wife's financial resources. (ECF no. 11.) Additionally, because the IFP application that he submitted was outdated and lacked an area for him to articulate his necessary expenses as described in *Rosa*, (*see* ECF no. 9), the Court instructed Mr. Arpin to fill out a new IFP application that might explain his significant expenses. (ECF no. 11.)

In response to the notice of insufficiency Mr. Arpin provided the Court with a letter that explains his wife's financial situation, which indicates that she does not have significant resources to provide assistance outside of what she is already giving him. (ECF no. 12 at 7.) The letter also explains that his additional spending was medically necessary. Mr. Arpin suffers from "high blood pressure, high cholesterol, and joint pain from inflammation," and he says that he has a different diet than the ordinary high-carbohydrate prison diet – and that his money was therefore spent on low-carbohydrate foods that the prison does not supply. (*Id.*) In support of this claim, he attached receipts for the past three months of his commissary purchases. (*Id.* at 11-19.) These receipts corroborated his statements in his supplemental letter to the court and were reflected in his inmate trust account. (*See* ECF no. 13.)

Given the documentation Mr. Arpin provided to supplement his claim and that it is corroborated in both his trust account and the receipts, the Court accepts that his spending on food is related to special dietary concerns. As such, the Court acknowledges that the food he purchased outside of what is provided to him by the Department of Corrections represents a "necessity of

life" as contemplated in *Rosa*. The letter also shows his wife's financial resources are not significant enough that Mr. Arpin "can get" the money otherwise needed to pay the filing fee as in *Fridman*. The supplemental information provided by Mr. Arpin also shows that his expenses were not the type of "spending down" present in cases like in *Hill* and *Crispin*.

Accordingly, the Court concludes that Mr. Arpin is unable to pre-pay the required filing fees without interfering with his ability to afford basic needs. It therefore **GRANTS** his motion to proceed in forma pauperis.

>                     /s/ Thomas O. Farrish
>                     Hon. Thomas O. Farrish
>                     United States Magistrate Judge